1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT FOR THE

8

EASTERN DISTRICT OF CALIFORNIA

9

| | | |
|---|---|---|
| JOANN B. SIMPSON, | ) | 1:10cv0337 DLB |
| Plaintiff, | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

10

11

12

13

14

15

16

Plaintiff Joann B. Simpson ("Plaintiff") seeks judicial review of a final decision of the

17

Commissioner of Social Security ("Commissioner") denying her application for Supplemental

18

Security Income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently

19

before the Court on the parties' briefs, which were submitted, without oral argument, to the

20

Honorable Dennis L. Beck, United States Magistrate Judge.[1]

21

**BACKGROUND**

22

In May 1999, Plaintiff filed her application for SSI. AR 152-54. She alleged disability since

23

October 26, 1998, due to a spot on her kidney, severe low back pain and acute asthma. AR 159.

24

The application was denied initially and upon reconsideration. AR 94-97, 99-102. Following

25

multiple remands, Administrative Law Judge ("ALJ") Robert A. Evans held hearings on August 23,

26

27

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.

28

1

2006, and on April 17, 2007.  AR 437-45, 446-72.  ALJ Evans issued a partially favorable decision on June 15, 2007, finding Plaintiff disabled beginning May 3, 1999, and ending on December 1, 2000.  AR 22-35.  On December 3, 2009, the Appeals Council denied review.  AR 7-9.

<u>Hearing Testimony</u>

1.      August 23, 2006 Hearing

ALJ Evans held a hearing on August 23, 2006, in Palmdale, California.  Plaintiff appeared without counsel.  Joseph Jensen, a medical expert, and Sandra Schneider, a vocational expert, also appeared.  AR 439.

At the outset of the hearing, the ALJ reviewed the procedural history of the case.  He first noted that Plaintiff had been denied benefits in 2001, when an ALJ found that she had the ability to perform full, medium work.  Following that determination, the Appeals Council remanded the case to a different ALJ, who decided the case in Plaintiff's favor without a hearing and determined that she was less than sedentary.  Thereafter, the Appeals Council found no evidence to support the determination that her condition had worsened from medium to less than sedentary.  Thus, the Appeals Council again remanded the case.  AR 439-40.

The ALJ next asked the medical expert, Dr. Jensen, if Plaintiff met or equaled a listing based on the records.  Dr. Jensen testified that he did not have adequate medical records after Plaintiff underwent back surgery to make that determination.  Given Dr. Jensen's response, the ALJ continued the hearing to obtain additional medical records.  AR 443.

2.      April 17, 2007

ALJ Evans reconvened the hearing on April 17, 2007, in Palmdale, California.  Plaintiff appeared with her attorney, Sherman Hardaway.  John Vivian. M.D., a medical expert, also appeared and testified.  AR 448.

Based on a review of the records, Dr. Vivian testified that Plaintiff had complained of low back pain with some arthritic changes and diabetes.  He did not think Plaintiff would meet or equal any listing.  He opined that she could perform light work primarily, with occasional postural limitations relative to her back pain.  Dr. Vivian disagreed with the 1999 consultative examination

finding that she was unable to work a full eight-hour day.  He explained that the inability to work would have been through the postoperative period of recovery after her surgery and for no more than a year.  AR 456.  His opinion was more in accord with the consultative examination completed two years later.  AR 456-57.

In response to questions from Plaintiff's attorney, Dr. Vivian testified that Plaintiff's foot pain in December 2006 could possibly be a sign or symptom of a person who suffers from diabetes. Dr. Vivian would not disagree with the treating source opinion that Plaintiff would not be able to do the full range of sedentary work at that point in time.  AR 457-58.

The ALJ also questioned Plaintiff about her past relevant work.  Plaintiff testified that prior to her back laminectomy she had foster kids, but never worked.  She got a check for each of the four kids, but did not use the money for herself.  She paid her rent out of her own AFDC.  AR 460-63.

In response to questions from her attorney, Plaintiff testified that she is not working now because of her back pain and her feet.  She cannot "stand up too long" and cannot sit down.  AR 463. After her back surgery, her back pain did not improve and she developed depression and anxiety. She also has problems with her shoulders.  She has diabetes, which causes dizziness and sometimes nausea.  She has pain in her feet.  She takes pain pills, but they do not help.  The doctor gave her crutches, which she uses when her feet hurt.  She also has a cane from her primary doctor.  AR 463-65.  She can stand about 20 minutes and sit about 20 minutes.  She cannot walk anywhere without her crutches or her cane, but with them she can walk for 30 or 40 minutes without rest.  AR 465-66.

Plaintiff further testified she takes Tylenol with codeine every four hours, which does not cause any side effects.  She takes Vicodin for back pain twice a day with no side effects.  She takes diabetes, allergy and high blood pressure medications.  She also takes medications for anxiety and depression.  She takes a muscle relaxer for her back and another pain medication.  She takes all of these pills every day.  She suffers from drowsiness and is tired from her medications.  AR 466-70.

During the day, she takes her medicine and lies back down.  She gets up, cleans herself and gets dressed.  She does not have any difficulty getting dressed or taking care of her personal hygiene. She lives with a nurse who prepares meals, but she can prepare meals when not in pain.  AR 470-71.

Medical Record

From December 1998 through October 1999, Plaintiff complained of lower back pain with occasional radiation to her left leg. She was prescribed different medications, including Toradol and Darvocet. AR 233-37, 255-60, 259, 280.

A lumbar spine image dated March 1, 1999, showed mild spondylosis L5-S1 with slight posterior and lateral disc bulge. AR 240-41. Magnetic Resonance Imaging ("MRI") of the lumbar spine in July 1999 was essentially negative. AR 290.

On August 30, 1999, Dr. Derek Chao completed a consultative internal medicine evaluation. Plaintiff complained of a kidney disorder and lower back pain which stared in October 1998. Plaintiff reported that she was able to cook, but did not do any housework. On physical examination, Plaintiff verbally complained of pain while walking down the hallway. She was able to get on and off the examination table, but had difficulty with her left leg. She put in a fair effort for the examination and was able to take off her shoes without much pain. Her station and gait were normal even though she complained of pain on walking. She had palpable tenderness throughout the left paravertebral muscle. She also had notable paravertebral muscle spasm, which was described as a moderate spasm of the left lower back. She had very little palpable tenderness of the spine and no palpable tenderness of the right lower back. She had decreased intensity on pinprick and dull exams in the left lower extremity. Dr. Chao diagnosed kidney disorder and low back pain. Based on the objective evidence, he opined that the number of hours the Plaintiff "could be expected to sit, stand and walk in an eight hour work day is two hours of the eight hour work day with normal breaks." AR 267. She could lift or carry up to 10 lbs. up to 1/3 of the work day. She had "postural limitations on pulling, bending and crouching and stooping and this [was] limited to frequently." There were no manipulative limitations on reaching, handling, feeling, grasping or fingering. She had no visual, communicative or work place environmental restrictions. AR 267.

On September 30, October 7, and October 15, 1999, Plaintiff received lumbar epidural steroid injections. AR 282-83, 287-88, 335-36.

On November 4, 1999, Plaintiff received emergency room treatment for asthma. AR 313-17.

4

On November 10, 1999, Dr. Anne M. Khong, a state agency physician, completed a Physical Residual Functional Capacity Assessment form.  Dr. Khong opined that Plaintiff could lift and/or carry 10 pounds occasionally, less than 10 pounds frequently, could stand and/or walk at least 2 hours in an 8-hour workday and could sit about 6 hours in an 8-hour workday.  She could push and/or pull without limitation.  AR 201.  She frequently could climb and balance and occasionally could stoop, kneel, crouch and crawl.  AR 202.  She had no manipulative, visual, communicative or environmental limitations.  AR 203-04.

On December 1, 1999, Plaintiff underwent a lumbar laminectomy and diskectomy at L4-5 and L5-S1 on the left side for a herniated disk.  AR 270-71.

On February 25, 2000, Dr. Edward I. Cherniss, a state agency physician, completed a Physical Residual Functional Capacity Assessment form for the period from October 1998 to November 30, 1999.  Dr. Cherniss opined that Plaintiff could lift and/or carry 10 pounds occasionally, less than 10 pounds frequently, could stand and/or walk at least 2 hours in an 8-hour workday, and could sit about 6 hours in an 8-hour workday.  She could push and/or pull without limitation.  AR 212.  She frequently could climb and balance and occasionally could stoop, kneel, crouch and crawl.  AR 213.  She had no manipulative, visual, or communicative limitations.  She should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. due to asthma.  AR 215.

On February 25, 2000, Dr. Cherniss also completed a Physical Residual Functional Capacity Assessment form for the period from December 1, 1999 to December 2000.  AR 222.  Dr. Cherniss opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, and could sit about 6 hours in an 8-hour workday.  She could push and/or pull without limitation.  AR 223.  She frequently could climb, balance, kneel and crawl and occasionally could stoop and crouch.  AR 224.  She had no manipulative, visual, or communicative limitations.  AR 225-26.  She should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.  Due to her history of asthma, she should refrain from working in environments with poor air quality.  AR 226.

On January 15, 2001, Plaintiff reported she was unable to walk since the morning.  However, it was noted that she ambulated into the waiting room.  AR 309.  On the same day, Plaintiff received emergency room treatment for shortness of breath.  She was diagnosed with asthma.  AR 310-12.

A chest x-ray completed on June 22, 2001, was normal.  AR 321.

On July 14, 2001, Dr. Emily Rubenstein, a Senior Resident in Neurology, completed a consultative orthopedic evaluation.  Plaintiff complained of severe left leg pain, weakness and numbness.  She reported being unable to perform any activity except for dressing and bathing herself, spending all day lying on the couch.  AR 295.  On examination, Plaintiff walked without an assistive device and sat down comfortably in a chair.  She was able to climb on and off the examination table without difficulty.  AR 296.  Straight leg rasing caused pain in both legs.  She had normal bulk and tone with no atrophy.  She had 5-/5 motor strength proximally in the left lower extremity with some poor effort.  The top of the left foot was numb to light touch and pinprick with no dermatomal distribution.  She was able to ambulate without assistance.  She walked somewhat slowly and guardedly, but had normal stance and normal base.  There was no unsteadiness.  She had mild difficulty with heel walking, but was able to toe walk and tandem walk without difficulty.  Based on examination, Dr. Rubenstein opined that Plaintiff could be expected to stand and/or walk about six hours in an eight-hour workday.  She had no restrictions to sitting and an assistive device was not medically necessary.  She should be able to lift and carry 50 pounds occasionally and 20 pounds frequently.  She had no postural, manipulative or environmental limitations.  AR 297-98.

On July 25, 2001, Dr. Rubenstein completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form.  AR 303-05.  She opined that Plaintiff could lift and/or carry 50 pounds occasionally, 20 pounds frequently and could stand and/or walk about 6 hours in an 8-hour workday.  She had no sitting, pushing or pulling limitations.  Dr. Rubenstein's conclusions were based on Plaintiff's low back pain with no objective deficits.  AR 303-04.  Dr. Rubenstein further opined that Plaintiff occasionally could climb, balance, kneel, crouch and crawl.  She had no manipulative, visual, communicative or environmental limitations.  AR 304-05.

1    A March 2004 radiologic report showed no significant abnormality of Plaintiff's L-spine.

2  AR 398.

3    In May 2004, Plaintiff complained of increasing lower back pain.  She was referred to the

4  orthopedic clinic at Harbor/UCLA for lower back pain with radiculopathy.  AR 380, 381, 386.

5    In June 2004, Plaintiff complained of increased anxiety and stress.  She was advised to

6  follow-up with mental health.  AR 378.

7    In February 2005, a Nurse Practitioner diagnosed Plaintiff with hypertension.  It was noted

8  that Plaintiff was doing well with her diabetes.  AR 369.

9    In September 2005, Plaintiff was diagnosed with anxiety.  AR 353.

10    On September 16, 2005, Plaintiff sought treatment from Dr. Jose Pascual, who noted chronic

11  low back pain syndrome.  AR 352.

12    In November 2005, Plaintiff complained of severe right big toe pain.  Dr. Pascual diagnosed

13  gout.  AR 351.  A subsequent x-ray showed no evidence of recent or healing fracture or dislocation.

14  She had minimal hallux valgus deformity of the right big toe, but no other significant radiologically

15  detectable pathology.  AR 364.

16    A lumbar spine x-ray completed on November 8, 2005, was normal.  AR 365.  A lumbar

17  spine CT scan in January 2006 showed no significant radiographic abnormality.  AR 362.

18    At some point in 2006, Plaintiff first saw Dianne L. DeFreece, PsyD, for complaints of

19  anxiety and depression.  On mental status exam, Plaintiff's mood was tearful, but her concentration,

20  insight and judgment were within normal limits and she had no apparent thought disorder.  Dr.

21  DeFreece diagnosed a depressive disorder NOS and recommended a medication review.  AR 343.

22    On May 23, 2006, Dr. Pascual noted Plaintiff had chronic low back pain since 1999.  AR

23  344.

24    On July 7, 2006, Plaintiff complained to Dr. Pascual that her low back pain was worse.  He

25  diagnosed her with chronic low back pain since 1998 and depression.  AR 342.

26    On August 9, 2006, Plaintiff saw Dr. DeFreece for a follow-up appointment.  Although

27  Plaintiff was "in severe stress" because of family issues, her mental status exam was within normal

28                                          7

limits.  Dr. DeFreece recommended medication services to determine the plausibility of increasing

Prozac during the crisis.  AR 341.

In September 2006, Plaintiff sought follow-up treatment with Dr. Pascual after a reported

seizure.  AR 424.  An EEG report dated November 20, 2006, noted Plaintiff had two seizures after

starting Prozac. Her medication was switched to Paxil and Dilantin was added.  The EEG showed no

positive evidence of cerebral dysfunction or epileptic irritability.  However, there was possible

obstructive sleep apnea.  AR 427-28.

An x-ray of Plaintiff's left foot on October 13, 2006, was normal.  AR 426.

On October 25, 2006, Plaintiff saw Dr. DeFreece.  Plaintiff's mental status exam was within

normal limits.  She reported getting joy from caring for her grandchildren.  AR 419.

In December 2006, Plaintiff was referred to podiatry and crutches were ordered for an early

foot ulcer.  AR 414-15.

On January 17, 2007, Plaintiff's mental status exam was within normal limits.  She again

reported to Dr. DeFreece that she was caring for a grandchild and also was looking forward to having

her granddaughters for the summer.  AR 410.

On January 20, 2007, Plaintiff sought urgent care treatment for neck pain.  She was provided

a prescription for physical therapy.  AR 406.  On January 25, 2007, Plaintiff complained of pain from

her shoulder to her back.  Dr. Pascual diagnosed lumbar spine strain.  AR 409.  On January 30, 2007,

Plaintiff continued to complain of swelling on both sides of her neck and pain.  Her neurological

evaluation showed no deficits.  AR 407.

On February 2, 2007, Dr. Pascual completed a Physical Residual Functional Capacity

Questionnaire form.  He reported seeing Plaintiff every two months for the period between

November 7, 2005 and February 2, 2007.  Plaintiff had diagnoses of chronic low back pain, diabetes

mellitus and seizures.  He described Plaintiff's pain as hurting all day with an intensity of 9-10/10.

Plaintiff's medications included Vicodin, Ultram, and Wellbutrin.  AR 433.  Dr. Pascual opined that

Plaintiff was not a malinger.  Although emotional factors did not contribute to the severity of her

symptoms and functional limitations, she had anxiety.  Dr. Pascual stated that Plaintiff's pain or

1    other symptoms were severe enough to interfere constantly with the attention and concentration

2    necessary to sustain simple, repetitive work tasks.  She was incapable of even "low stress" work

3    because she could not sit or stand too long.  AR 434.  Plaintiff could sit 30 minutes at one time and

4    could stand 30 minutes at one time.  She could sit, stand and/or walk less than 2 hours total in an 8-

5    hour workday.  She required 4 unscheduled breaks per 2 hour period.  She could not lift less than 10

6    pounds.  She could never twist, crouch or climb stairs and could rarely stoop/bend or climb stairs.

7    She did not have any limitation in doing repetitive reaching, handling or fingering.  AR 434-35.  Dr.

8    Pascual estimated that she was likely to be absent more than 4 days per month as a result of her

9    impairments.  AR 436.

10                   ALJ's Findings

11          The ALJ found that Plaintiff did not engage in substantial gainful activity from May 3, 1999,

12   through November 30, 2000.  She had the severe impairments of status post lumbar laminectomy in

13   December 1999, chronic low back pain syndrome, and diabetes mellitus.  For the period from May 3,

14   1999, through November 30, 2000, Plaintiff had a residual functional capacity ("RFC") that

15   precluded even sustained sedentary work in an ordinary work setting and there were no jobs in the

16   national economy that she could perform.  The ALJ further determined that beginning on December

17   1, 2000, Plaintiff had the RFC to perform light work with a limitation to occasional climbing,

18   balancing, stooping, kneeling, crouching and crawling.  With this RFC, she could perform a

19   significant number of jobs in the national economy.  AR 31-35.

20                               **SCOPE OF REVIEW**

21          Congress has provided a limited scope of judicial review of the Commissioner's decision to

22   deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the

23   Court must determine whether the decision of the Commissioner is supported by substantial

24   evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson*

25   *v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514

26   F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might

27   accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole

28                                      9

must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.,* *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* *Sanchez v. Sec'y of Health and Human Serv.,* 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen,* 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan,* 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. § 416.920 (a)-(g) Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity from May 3, 1999, through November 30, 2000; (2) has an impairment or a combination of impairments that is considered "severe" (status post lumbar laminectomy in December 1999, chronic low back pain syndrome, and diabetes mellitus) based on the requirements in the Regulations (20 C.F.R. § 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) she has no past relevant work; and (5) could not perform other jobs in the national economy during the period from May 3, 1999, through November 30, 2000. However, beginning December 1, 2000, she could perform a significant number of jobs in the national

economy. AR 31-35.

Here, Plaintiff contends that the ALJ erred by rejecting the functional capacity assessment of her treating physician, Dr. Pascual.  She concedes the issue of disability prior to treatment with Dr. Pascual in 2005.  Opening Brief, p. 8

## DISCUSSION

Plaintiff essentially contends that the ALJ improperly rejected the opinion of her treating physician, relying instead on the medical experts's opinion that she would be capable of light work with postural limitations within one year after her back surgery.  AR 28, 31.  Generally, more weight is given to a treating physician's opinion because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Where, as here, a non-treating physician's opinion contradicts that of a treating physician "but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citations and quotations omitted).

In this case, the ALJ set out a detailed and thorough summary the facts and clinical evidence, stated his interpretations and made findings.  In so doing, the ALJ did not rely solely on the medical expert's testimony to reject Dr. Pascual's opinion regarding Plaintiff's functional capacity.  *See Magallanes*, 881 F.2d at 752.  First, the ALJ declined to give weight to Dr. Pascual's RFC assessment in favor of Plaintiff's treatment records.  An ALJ may properly reject a treating physician's opinion that is not supported by clinical findings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.2004).  The ALJ noted that Dr. Pascual based his functional assessment on Plaintiff's neck and back pain, diabetes and seizures.  However, the ALJ cited treatment records showing Plaintiff

1   had full range of motion of the neck and upper extremities with normal muscle strength and no

2   neurological deficits; she had been doing well with her diabetes; she has had no repeat seizure

3   activity since her medication was changed and an EEG showed no epileptic activity.  AR 30, 367,

4   407-08, 427-28.

5          Second, the ALJ rejected Dr. Pascual's opinion because the alleged physical limitations were

6   inconsistent with Plaintiff's report to Dr. DeFreece that she cared for her grandchildren.  *See, e.g.,*

7   *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected treating physician's

8   restrictions in part because they were inconsistent with claimant's activity level, including care of

9   children).  According to the record, Plaintiff reported to Dr. DeFreece in October 2006 that she was

10  "getting joy from caring for her grandchildren."  AR 419.  In January 2007, Plaintiff again reported

11  to Dr. DeFreece that she was "caring for [her] grandchild" and looking forward to "having

12  grandaughters [sic] for the summer."  AR 410.

13         Third, the ALJ properly discounted Dr. Pascual's limitations based on his treatment of

14  Plaintiff's chronic back pain with conservative measures.  *See*, *e.g.*, *Rollins*, 261 F.3d at 856 (ALJ

15  properly rejected opinion of treating physician who prescribed conservative treatment); *Jones v.*

16  *Astrue*, 2011 WL 1253727, *4 (E.D. Cal. Mar. 31, 2011) ("[A] conservative course of treatment

17  relative to a finding of total disability is a proper basis for discounting the extreme restrictions

18  reported by a treating physician.").  The ALJ cited Dr. Pascual's treatment records demonstrating

19  that Plaintiff was provided medications, but no other means to address her alleged back pain.  AR 30.

20  For instance, Dr. Pascual instructed Plaintiff in September and October 2006 to continue her

21  medications.  AR 420-24.  In 2007, Dr. Pascual saw Plaintiff for complaints of neck, back and leg

22  pain.  He provided her with medications and she was advised to return in three months.  AR 30, 404-

23  05.

24         Plaintiff argues that the ALJ rejected Dr. Pascual's functional capacity assessment based on

25  an incorrect assumption that it was generated to qualify Plaintiff for benefits.  Opening Brief, p. 8.

26  According to the record, the ALJ gave less weight to Dr. Pascual's opinion because the form "was

27  completed solely for the purpose of qualifying the claimant for benefits."  AR 30.  However, the ALJ

28                                                      12

1    further explained that the form was "not credible or reliable" because it stated "findings and

2    limitations that were inconsistent with the findings and opinions noted in the longitudinal treatment

3    notes." AR 30. As explained above, the ALJ properly discounted Dr. Pascual's opinion as

4    inconsistent with the clinical findings.

5           Plaintiff next argues that the ALJ incorrectly attributed Dr. Pascual's opinion about

6    intolerance for low stress work to her mental functioning, not her physical functioning. Plaintiff's

7    argument lacks merit and incorrectly summarizes the ALJ's analysis. In the functional capacity

8    assessment, Dr. Pascual stated that Plaintiff's pain or other symptoms were severe enough to

9    interfere constantly with the attention and concentration necessary to sustain, simple, repetitive work

10   tasks. He further opined that Plaintiff was incapable of even "low stress" work because she "can't sit

11   too long or stand too long." AR 434. The ALJ rejected Dr. Pascual's assessment that Plaintiff could

12   not "withstand even low stress work or that her concentration [was] comprised" because it was

13   inconsistent with the treating records from Dr. DeFreece. AR 30. The ALJ referenced Dr.

14   DeFreece's express notations that Plaintiff's concentration and mental status examinations were

15   within normal limits. AR 29, 30, 341, 343, 410, 419. Plaintiff admits that Dr. Pascual found no

16   discrete mental impairment in function. Rather, Plaintiff believes that Dr. Pascual's limitations were

17   from a "physical standpoint." Opening Brief, p. 9. However, Plaintiff overlooks the ALJ's

18   determination that the "alleged mental and *physical* limitations" were inconsistent with Plaintiff's

19   reports that she cared for her grandchildren. AR 30 (emphasis added). As discussed above, the ALJ

20   properly rejected Dr. Pascual's physical limitations in part because of Plaintiff's actions in caring for

21   her grandchildren.

22          As a final argument, Plaintiff contends that Dr. Vivian, the medical expert, agreed with Dr.

23   Pascual's functional limitation assessment. To support this contention, Plaintiff states that when Dr.

24   Vivian was asked if he would disagree with the treating physician at the point in time when

25   Plaintiff's diabetes caused an ulcer on one foot, Dr. Vivian stated he would not "at that point time."

26   Opening Brief, p. 9.

27

28                                                        13

According to the transcript, Dr. Vivian testified as follows:

Q   Did you notice in 15F that in December of last year she was prescribed crutches?

A   15F she what?

Q   She

A   That she had limping, yes, on the left.

Q   Right, in December of '06.

A   Yes.

Q   Would you state at any point after the, that period that she would have some difficulties with ambulation?

A   Well, she had foot pain, on the left foot, also on the sole of her foot which she, through, through the period of time that that was healed . . . .

Q   Would that be a sign or a symptom of a person who suffers from diabetes, possibly?

A   Possibly, yes.

Q   Okay.  Would you say that as of at least that particular point in time she would not be able to do a full range of sedentary work based upon Exhibit, her treating physician in 16F.

A   I think she should be able to do sedentary work during that time.

Q   After the diabetes diagnosis and

A   Yes.

Q    and after her treating source told her she could not?  So you disagree with her treating source?

A   I do not have that information, but I wouldn't disagree with that.

Q   You would not?

A   I would not disagree with the treating source at that point in time.

AR 457-58.  Contrary to Plaintiff's argument, this testimony does not demonstrate that Dr. Vivian

agreed that Plaintiff was unable to maintain even sedentary work for the entire period from 2005

through 2007.  Instead, it is clear that Dr. Vivian limited his agreement to an isolated point in time.

Dr. Vivian believed that Plaintiff would have limitations while her foot healed, but there was no

indication that Plaintiff's foot problems were ongoing.  Indeed, the ALJ expressly found no evidence

14

of an ongoing foot ulcer.  AR 31.  Plaintiff does not cite record evidence to contradict this finding.

Plaintiff's argument is further undermined by Dr. Vivian's express testimony that diabetes had not been a significant medical problem and that Plaintiff could perform the equivalent of light work with occasional postural limitations due to back pain.  AR 455-56.

For the reasons stated, the ALJ provided specific and legitimate reasons for discounting Dr. Pascual's functional assessment.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Joann B. Simpson.

IT IS SO ORDERED.

**Dated:    June 1, 2011**                              **/s/ Dennis L. Beck**
                                                        UNITED STATES MAGISTRATE JUDGE

15